UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEAH TOLBERT, *et al.*, | ) | Case No.: 1:10 CV 1308 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| COAST TO COAST DEALER SERVICES, INC., | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Plaintiffs Leah Tolbert and Diana Barker ("Plaintiffs"), bring the above-captioned suit against Defendant, Coast to Coast Dealer Services, Inc. ("Defendant" or "CTCDS"). Currently pending before this court are Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 10) and Motion for Reconsideration (ECF No. 14).

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Tolbert purchased a 2004 Sports Jeep Liberty Truck as a birthday gift for Plaintiff Barker on February 12, 2009, from First Used Cars II, Inc., a used car dealership. (Compl., ¶¶ 7-9, ECF No. 1-1.) The vehicle's purchase price, excluding taxes was set at $7,900. (*Id.* at ¶ 8.) Plaintiffs were offered a twelve-month engine and transmission agreement ("Vehicle Service Agreement" or "VSA") with the vehicle for the price of $199.[1] (*Id.*) Plaintiff Tolbert gave First

---

[1] Although Plaintiffs state that they made a down payment on the car and paid for the VSA on February 12, 2009, the court notes that the VSA shows it was signed by Plaintiff Tolbert on February 23, 2009. (VSA at 1, ECF No. 14-1.)

Used Cars II and Edward Jackson ("Jackson"), a managing officer, agent or employee of the company, $3,500.00 as a down payment for the vehicle, and an additional $199 as payment for the VSA. (*Id.* at ¶¶ 2, 9.) An agreement was reached which allowed Plaintiffs to make payments of $300 per month until the vehicle was paid in full. (*Id.* at ¶ 11.)

Plaintiffs made the payments until the vehicle was no longer operable. (*Id.* at ¶ 11.) They also stopped making payments because the service agreement appeared to be a hoax. (*Id.*) Plaintiffs encountered numerous problems with the vehicle. The first problem appeared within the first 24 hours of ownership when the check engine light came on. (*Id.* at ¶ 12.) They had to bring the vehicle back to First Used Cars II over ten different times for various problems, including the engine light, engine smoke, fan relay system, and replacement of the water pump and thermostat. (*Id.* at ¶¶ 13-16.)

In approximately April of 2009, the engine begin to make ticking and knocking noises, and the vehicle was again taken in for service. (*Id.* at ¶ 17.)[2] Plaintiffs maintain that they were told by First Used Cars II and Jackson that the old engine would be replaced in the vehicle. (*Id.* at ¶ 20.) Plaintiffs state they contacted First Used Cars II, and Jackson to inform them that they wished to exercise the terms of the VSA. (*Id.* at ¶ 21.) Plaintiffs contend First Used Cars II, Jackson, and Defendant CTCDS, refused to honor the terms of the VSA. (*Id.* at ¶ 21.) Plaintiffs then went to First Used Cars II to inquire about the status of the repairs, during which a verbal altercation occurred. (*Id.* at ¶ 22.) The vehicle was eventually towed to another location by Jackson and First

---

[2] During this time, Plaintiff Barker had to rent a car to get to and from work. (*Id.* at ¶ 17.) Plaintiff Barker was eventually let go from her place of employment as a result of being unable to make it to work on time, due to the problems with the vehicle. (*Id.* at ¶ 19.)

Used Cars II, which cost them $1,937.25 for towing and other services. (*Id.* at ¶ 23.) Plaintiffs later paid for the vehicle to be towed to a new location for repair or replacement of the engine, all of which cost them $2,354. (*Id.* at ¶ 24.) Plaintiffs state that the $300 monthly payments at the time had been waived, with the cost of repairs counted towards the payments.[3] (*Id.*) On April 16, 2010, Jackson, First Used Cars, or their agent, repossessed the vehicle without notice to the Plaintiffs, and following the repairs made on the vehicle. (*Id.* at ¶ 27.) Plaintiff Barker's mother attempted to retrieve the vehicle and/or personal effects, but was not allowed to do so. (*Id.* at ¶ 28.)

Plaintiff filed suit against Jackson, First Used Cars II, and CTCDS, on May 6, 2010, in the Cuyahoga Court of Common Pleas. (ECF No. 1-1.) In Count One, Plaintiffs allege fraud in violation of their consumer rights under Ohio Revised Code §§ 1345.01 to 1345.13. (Compl. at ¶¶ 29-35.) In Count Two, Plaintiffs allege breach of contract. (*Id.* at ¶¶ 36-39.) On both of these counts, Plaintiffs seek compensatory and punitive damages in excess of $25,000. (*Id.* at ¶¶ 36-39.) Plaintiffs later dismissed, with prejudice, Defendants Jackson and First Used Cars II. (ECF No. 1-2.)

Defendant CTCDS filed a Notice of Removal on June 14, 2010, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1.) On July 6, 2010, Plaintiffs filed an Opposition to Amended Answer of Defendant Coast to Coast Dealer Service, Inc., in which they disputed the enforcement of the arbitration clause. (ECF No. 7.) On July 13, 2010, Defendant filed a Motion to Compel Arbitration and Stay Proceedings. (ECF No. 10.) On February 3, 2011, the court issued an Order setting a hearing for May 18, 2011 at 10:00 a.m., on the issue of the unconscionability of the

---

[3] Plaintiffs actually state that the $300 payments had been waived at that time, with the cost of repairs counted towards new repairs. The court concludes that Plaintiff likely meant payments, in light of the preceding statements.

arbitration clause. (ECF No. 12.) The court later granted the Unopposed Motion to Change the Hearing Date (ECF No. 13), and reset the hearing for May 16, 2011 at 10:30 a.m. On February 16, 2011, Defendant filed a Motion for Reconsideration and/or Clarification of the Court's February 3, 2011 Order on the Motion to Compel Arbitration. (ECF No. 14).

The court notes that it has the authority to reconsider its Order setting a hearing on the issue of unconscionability. As the Sixth Circuit has held, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted). *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). Defendant maintains that the court should reconsider its prior Order, allowing for discovery and a hearing on the issue of the unconscionability of the arbitration clause, and grant its Motion to Compel Arbitration. Defendant contends: Plaintiffs' claims against it are based upon the VSA and not the purchase of the automobile; Plaintiffs cannot establish that the arbitration provision is substantively unconscionable; Plaintiffs' allegations that the arbitration provision is procedurally unconscionable may not be considered by the court, and are insufficient to establish procedural unconscionability as a matter of law; and Plaintiffs should not be allowed to conduct discovery. (Mot. Recons. at 3-13.) In the alternative, Defendant requests that the court clarify the scope of permissible discovery. (*Id.* at 15.)

Defendant's contention that the court can only consider challenges to the making of the arbitration provision, and not the contract as a whole, is correct. *See Prima Paint Corp. v. Flood and Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967). Challenges to the making of the entire contract

are to be decided by the arbitrator. *Id*. at 402-04. However, Plaintiffs have made a challenge to the arbitration clause, and have put forth arguments alleging procedural and substantial unconscionability. Although their arguments may ultimately be unsuccessful, Ohio courts favor permitting discovery on all the relevant factors, and affording the parties the opportunity to present their findings on the issue of unconscionability. *See e.g., Strader v. Magic Mortors of Ohio, Inc.*, No. 2006CA00376, 2007 WL 2893422, at *4 (Ohio App. Oct. 1, 2007); *Swad v. Hampton,* No. 03AP-294, 2003 WL 22927367 (Ohio App. Dec. 11, 2003); *Klimaszewski v. Ganley Inc.,* No. 88762, 2007 WL 2134573 (Ohio App. July 26, 2007). Therefore, the court reiterates its prior ruling allowing for discovery and a hearing on the issue of the unconscionability of the arbitration clause.

The court clarifies that the discovery permitted is in regard to the procedural and substantive unconscionability of the arbitration clause. In determining if there is procedural unconscionability, the "court will consider factors bearing on the relative bargaining positions of each party such as age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract." *Eagle v. Fred Martin Motor Company*, 809 N.E.2d 1161, 1171 (Ohio App. 2004) (internal citations omitted). The courts have not provided a specific list of factors to consult to determine if substantive unconscionability exists, as they have done with procedural unconscionability, because the determination of commercial reasonableness varies with the content of the contract terms at issue. *Collins v. Click Camera & Video, Inc.,* 621 N.E.2d 1294, 1299 (Ohio App. 1993). However, courts that have examined contract clauses for substantive unconscionability have considered the following factors: "the fairness of the terms, the charge for services rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id*. Therefore, discovery on the relevant factors

regarding procedural and substantive unconscionability may be undertaken by the parties. It is up to the parties to determine if they need or wish to take discovery prior to the court's determination on the Motion to Compel Arbitration. The parties shall have until May 11, 2011 to conduct discovery. At the hearing scheduled for May 16, 2011 at 10:30 a.m., the court will hear oral argument from counsel and testimony from any pertinent witnesses that the parties may wish to call. If the parties will be calling witnesses, they must provide a witness list to opposing counsel and the court by May 6, 2011.

Therefore, for the aforementioned reasons, the court denies Defendant's Motion for Reconsideration (ECF No. 14).

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

April 19, 2011