UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEAH TOLBERT, et al., | ) | Case No.: 1:10 CV 1308 |
|     Plaintiffs | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| COAST TO COAST DEALER SERVICES, INC., | ) ) ) | |
|     Defendant | ) | ORDER |

Plaintiffs Leah Tolbert and Diana Barker ("Plaintiffs"), bring the above-captioned suit against Defendant, Coast to Coast Dealer Services, Inc. ("Defendant" or "CTCDS"). Currently pending before this court is Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 10). For the reasons stated herein, the court grants Defendant's Motion.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff Tolbert purchased a 2004 Jeep Sports Liberty Truck as a birthday gift for Plaintiff Barker on February 12, 2009, from First Used Cars II, Inc., a used car dealership. (Compl., ¶¶ 7-9, ECF No. 1-1.) The vehicle's purchase price, excluding taxes, was set at $7,900. (*Id.* at ¶ 8.) Plaintiffs were offered a twelve-month engine and transmission agreement ("Vehicle Service

Agreement" or "VSA") with the vehicle for the price of $199.[1] (*Id*.) Plaintiff Tolbert gave First Used Cars II and Edward Jackson ("Jackson"), a managing officer, agent or employee of the company, $3,500.00 as a down payment for the vehicle, and an additional $199 as payment for the VSA. (*Id.* at ¶¶ 2, 9.) An agreement was reached which allowed Plaintiffs to make payments of $300 per month until the vehicle was paid in full. (*Id.* at ¶ 11.)

Plaintiffs made the payments until the vehicle was no longer operable. (*Id.* at ¶ 11.) They also stopped making payments because the service agreement appeared to be a hoax. (*Id.*) Plaintiffs encountered numerous problems with the vehicle. The first problem appeared within the first 24 hours of ownership when the check engine light came on. (*Id*. at ¶ 12.) They had to bring the vehicle back to First Used Cars II over ten different times for various problems, including the engine light, engine smoke, fan relay system, and replacement of the water pump and thermostat. (*Id.* at ¶¶ 13-16.)

In approximately April of 2009, the engine begin to make ticking and knocking noises, and the vehicle was again taken in for service.[2] (*Id.* at ¶ 17.) Plaintiffs maintain that they were told by First Used Cars II and Jackson that the old engine would be replaced in the vehicle. (*Id.* at ¶ 20.) Plaintiffs state they contacted First Used Cars II, and Jackson to inform them that they wished to exercise the terms of the VSA. (*Id.* at ¶ 21.) Plaintiffs contend First Used Cars II, Jackson, and

---

[1] Although Plaintiffs state that they made a down payment on the car and paid for the VSA on February 12, 2009, the court notes that the VSA shows it was signed by Plaintiff Tolbert on February 23, 2009. (VSA at 1, ECF No. 14-1.)

[2] During this time, Plaintiff Barker had to rent a car to get to and from work. (*Id*. at ¶ 17.) Plaintiff Barker was eventually let go from her place of employment as a result of being unable to make it to work on time, due to the problems with the vehicle. (*Id.* at ¶ 19.)

Defendant CTCDS, refused to honor the terms of the VSA. (*Id.* at ¶ 21.) Plaintiffs then went to First Used Cars II to inquire about the status of the repairs, during which a verbal altercation occurred. (*Id.* at ¶ 22.) The vehicle was eventually towed to another location by Jackson and First Used Cars II, which cost them $1,937.25 for towing and other services. (*Id.* at ¶ 23.) Plaintiffs later paid for the vehicle to be towed to a new location for repair or replacement of the engine, all of which cost them $2,354. (*Id.* at ¶ 24.) Plaintiffs state that the $300 monthly payments at the time had been waived, with the cost of repairs counted towards the payments.[3] (*Id.*) On April 16, 2010, Jackson, First Used Cars II, or their agent, repossessed the vehicle without notice to the Plaintiffs, and following the repairs made on the vehicle. (*Id.* at ¶ 27.) Plaintiff Barker's mother attempted to retrieve the vehicle and/or personal effects, but was not allowed to do so. (*Id.* at ¶ 28.)

Plaintiffs filed suit against Jackson, First Used Cars II, and CTCDS, on May 6, 2010, in the Cuyahoga Court of Common Pleas. (ECF No. 1-1.) In Count One, Plaintiffs allege fraud in violation of their consumer rights under Ohio Revised Code §§ 1345.01 to 1345.13. (Compl. at ¶¶ 29-35.) In Count Two, Plaintiffs allege breach of contract. (*Id.* at ¶¶ 36-39.) On both of these counts, Plaintiffs seek compensatory and punitive damages in excess of $25,000. (*Id.* at ¶¶ 36-39.) Plaintiffs later dismissed, with prejudice, Defendants Jackson and First Used Cars II. (ECF No. 1-2.)

Defendant CTCDS filed a Notice of Removal on June 14, 2010, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1.) On July 6, 2010, Plaintiffs filed an Opposition to Amended Answer of Defendant Coast to Coast Dealer Service, Inc., in which they disputed the enforcement

---

[3] Plaintiffs actually state that the $300 payments had been waived at that time, with the cost of repairs counted towards new repairs. The court concludes that Plaintiff likely meant payments, in light of the preceding statements.

-3-

of the arbitration clause. (ECF No. 7.) On July 13, 2010, Defendant filed a Motion to Compel Arbitration and Stay Proceedings. (ECF No. 10.) On February 3, 2011, the court issued an Order setting a hearing for May 18, 2011, at 10:00 a.m., on the issue of the unconscionability of the arbitration clause. (ECF No. 12.) The court later granted the Unopposed Motion to Change the Hearing Date (ECF No. 13), and reset the hearing for May 16, 2011, at 10:30 a.m. Defendant also filed a Motion for Reconsideration and/or Clarification of the Court's February 3, 2011 Order on the Motion to Compel Arbitration (ECF No. 14). The court declined to reconsider its Order (ECF No. 12), and provided Defendant with the requested clarification regarding discovery. (April 19, 2011 Order, ECF No. 16.)

## II. UNCONSCIONABILITY HEARING

The court held a hearing on May 16, 2011, at approximately 11:00 a.m. Plaintiffs did not appear at the hearing, but the court nevertheless heard arguments from Defendant's counsel, relative to the unconscionability of the arbitration clause. Counsel for Plaintiffs phoned the court on the same day of the hearing, but several hours after it was concluded, indicating that he mistakenly thought this hearing would be held on May 18, 2011, and therefore was not present at the hearing on May 16, 2011. However, he indicated that the matter has been thoroughly briefed, that he did not intend to call any witnesses at the hearing, and that the court should proceed to decide the matter on the documents already before the court. The court finds after reviewing all of the relevant submissions of the parties, and the hearing on the Motion, that even if the arbitration clause is deemed to be procedurally unconscionable, there is no substantive unconscionability. Therefore, the arbitration clause is enforceable.

An unconscionable contract is one in which there is "an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *Collins v. Click Camera & Video, Inc.,* 621 N.E.2d 1294, 1299 (Ohio App. 1993). To demonstrate that an arbitration clause is unenforceable, the party asserting unconscionability must prove that the clause is both substantively and procedurally unconscionable under Ohio law. *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (2009). *See also Collins,* 621 N.E.2d at 1299; *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 20 (Ohio 2008). Procedural unconscionability refers to the "individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible." White & Summers, Uniform Commercial Code (1988) 219, Section 4-7. Substantive unconscionability refers to the contract terms and whether or not they are commercially reasonable. *See Eagle v. Fred Martin Motor Company*, 809 N.E.2d 1161, 1170-71 (Ohio App. 2004). The courts have considered the following when determining if a contract is substantively unconscionable: "the fairness of the terms, the charge for services rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Collins,* 621 N.E.2d at 1299. Plaintiffs argued that the arbitration clause was substantively unconscionable for the following reasons: because it forces them to give up their right to be awarded attorneys' fees and punitive damages, they will be forced to bear significantly higher costs in arbitration proceedings, and because of the cost allocation provision allowing the arbitrator to decide if the Plaintiffs or the Defendant will be responsible for the fees. (Opp. to Amended Answer at 3-7, ECF No. 7.) At the hearing, Defendant presented arguments, reiterating those raised in its briefing, on how Plaintiffs are unable to demonstrate substantive unconscionability. Contrary to Plaintiffs' argument, the full range of damages that the state allows by statute are available in

arbitration. Further, if costs are ultimately assessed against the Plaintiffs in the arbitration, the company, under the applicable arbitration rules, would have to pay them if Plaintiffs were unable to pay. In its briefing, Defendant also noted that the arbitration clause states that if the Plaintiffs are unable to pay the initial fees for arbitration, it will advance all or part of the costs. The court finds Defendant's arguments well-taken and that all of Plaintiffs' arguments as to the substantive unconscionability of the arbitration clause are meritless.[4]

It was Plaintiffs' burden to demonstrate procedural and substantive unconscionability. Plaintiffs have not met this burden. Thus, the arbitration clause is enforceable.

### III. LEGAL STANDARD - COMPELLING ARBITRATION

The Federal Arbitration Act ("FAA") provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order compelling arbitration from any district court "which, save for such agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties. . . ." 9 U.S.C. § 4. Federal law requires that courts "rigorously enforce agreements to arbitrate." *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (declaring a federal policy favoring arbitration) (internal citation omitted). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir. 1990). The Sixth Circuit applies a four-part test to determine whether to grant motions to stay and compel arbitration:

---

[4] In addition to not being present at the hearing, Plaintiffs' counsel also did not provide any response to any of Defendant's arguments regarding substantive unconscionability, put forth in its Motion for Reconsideration (ECF No. 14).

> **[F]irst**, it must determine whether the parties agreed to arbitrate; **second**, it must determine the scope of that agreement; **third**, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and **fourth**, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (emphasis added).[5]

## IV. LAW AND ANALYSIS

### A. Agreement to Arbitrate

Plaintiff Tolbert entered into a contract with Defendant on or about February 23, 2009, through the VSA. (VSA, ECF No. 10-1.) The VSA contains an arbitration clause. (Section L, VSA at 4.) The arbitration clause applies equally to Plaintiff Tolbert and Defendant. (*Id.*) The arbitration clause states in relevant part:

> any and all claims, disputes, or controversies of any nature whatsoever (whether in **CONTRACT**, tort or otherwise, including statutory common law, fraud (whether by misrepresentation or omissions) or other intentional tort, property or equitable claims) arising out of, relating to, or in connection with (a) this **CONTRACT** or any prior **CONTRACT**, and the purchase thereof; and b) the validity, scope, interpretation, or enforceability of this Provision or the entire Agreement ("Claim"), shall be resolved by binding arbitration before a single arbitrator...This Provision is part of a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act. 9 U.S.C. § 1, *et. seq.*

(*Id.*) The arbitration clause provides for the arbitration for any dispute between the parties arising out of the VSA. (*Id.*) The only argument Plaintiffs make in opposition to the arbitration clause,

---

[5] The court notes that Plaintiffs have not filed any response to Defendant's Motion to Compel Arbitration and Stay Proceedings, though they did provide limited argument regarding unconscionability in their Opposition to Amended Answer (ECF No. 7).

through their Opposition to Defendant's Amended Answer, is that the arbitration clause is unenforceable because it is unconscionable. The court has already addressed this argument, and for the reasons stated above, finds that the arbitration provision is not unconscionable.

The only remaining issue regarding whether there was an agreement to arbitrate is whether Plaintiff Barker is bound by the arbitration clause, in a contract signed by Plaintiff Tolbert and Jackson, on behalf of Defendant Coast to Coast Dealer Services, Inc. Defendant argues that Plaintiff Barker is bound, even though a non-signatory, because she is a third party beneficiary. As she seeks to accept the benefits of the contract, she must also accept the burdens, which include the arbitration provision. The court finds this argument well-taken.

It is well recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). There are some instances though, when an arbitration agreement may be enforced against a non-signatory party. *LaSalle, Inc. v. Int'l Bhd. of Electrical Workers Local No. 665*, 336 F. Supp.2d 727, 729 (W.D. Mich. 2004). The *LaSalle* court stated that "[o]rdinary principles of contract law are used to determine if non-signatory is to be bound by the contract and 'a party may be bound by an agreement to arbitrate even in the absence of a signature.'" *Id*. (internal citations omitted).

Ohio courts have defined a third party beneficiary as "one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise." *Berge v. Columbus Community Cable Access*, 736 N.E.2d 517, 532 (Ohio App. 1999). Defendant asserts that Plaintiff Barker is a third party beneficiary since the vehicle was purchased for her. In *Peters v. Columbus Steel Castings Co.*, No. 05AP-308, 2006 WL 225274, at *6 (Ohio App. Jan. 31, 2006), the court

found that "[a] third party beneficiary will only be bound by the terms of the underlying contract where the claims asserted by the beneficiary arise from its third party beneficiary status." (quoting *E.I. Dupont de Nemours & Co., v. Rhone Poulenc Fiber & Resin Intermediaries, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001)). The obligation arises when the beneficiary seeks to enforce the contract, and as a result, the beneficiary must also accept its burdens. *Peters,* 2006 WL 225274 at *6. Courts have held that third party beneficiaries of contracts agreed upon by other parties are bound to the arbitration clauses in those contracts, especially when the third party beneficiary is suing for breach of contract. *See, e.g., Borsack v. Chalk & Vermilion Fine Arts, Ltd.,* 974 F. Supp. 293, 300 (S.D.N.Y.1997) (citing multiple cases supporting the proposition that a third party beneficiary suing on a contract must observe the contract's arbitration requirements). Plaintiff Barker is a third party beneficiary, asserting a claim for breach of contract, and seeking to enforce rights of the contract. Therefore, she must be held to its burdens, such as the arbitration provision.

In addition, nonsignatories may be bound to contract through ordinary contract and agency principles. *See Javitch,* 315 F.3d at 629. The Sixth Circuit has used the five theories recognized by the Second Circuit in *Thomson-CSF v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995), to bind nonsignatories to arbitration agreements. *Id.* The five theories are: incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel. *Id.* The court in *Thomson* found a nonsignatory to be bound to an arbitration agreement under an estoppel theory, when the nonsignatory seeks a direct benefit from the contract, but claims not to be bound by the arbitration provision. 64 F.3d at 778-79. When only an indirect benefit is sought, it is only the signatory that is estopped from avoiding arbitration. *Id*. at 779. In this case, Plaintiff Barker is seeking a direct benefit from the VSA, in alleging fraud and breach of contract for the failure of Defendant to fix her

vehicle in accordance with the VSA. Therefore, under an estoppel theory, she is estopped from avoiding arbitration.

Finding the above cited cases to be persuasive, the court finds that Plaintiff Barker is considered to be a party to the VSA. As a third party beneficiary seeking to enforce rights of the contract, she must be held to its burdens as well, including the arbitration provision. She can also be subject to arbitration under an estoppel theory. Accordingly, the court finds that the parties agreed to arbitrate.

### B. Scope of the Arbitration Agreement

Next, the court must determine whether Plaintiffs' claims are within the scope of the arbitration clause. *Stout*, 228 F.3d at 714. The arbitration provision states that "any and all claims, disputes, or controversies of any nature whatsoever (whether in CONTRACT, tort or otherwise, including statutory common law, fraud (whether by misrepresentation or omissions) or other intentional tort, property or equitable claims) arising out of, relating to, or in connection with (a) this CONTRACT," will be resolved in binding arbitration. (Section L, VSA at 4, ECF No. 10-1.) Because the arbitration provision provides for the arbitration of *any* dispute, it is broad in scope.

The Sixth Circuit held in *Solvay Pharms. v. Duramed Pharms.*, *Inc.*, 442 F.3d 471, 482 (6th Cir. 2006) (internal quotation marks and citation omitted) that:

> [w]hen faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration . . . . Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

-10-

*See also Simon v. Pfizer, Inc.,* 398 F.3d 765, 773 n. 12 (6th Cir. 2005) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . . If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms.") (citations omitted).  In the present case, the parties do not dispute that the arbitration clause encompasses all of Plaintiffs' claims.  Plaintiffs are alleging fraud and breach of contract in their Complaint.  Both of these claims are covered under the arbitration provision.  Because the arbitration clause is broad in scope and there are no doubts concerning the scope, Plaintiffs' claims are within the scope of the arbitration clause.

### C.  No Federal Statutory Claims at Issue

If federal statutory claims are asserted, then the court "must consider whether Congress intended those claims to be non-arbitrable." *Stout*, 228 F.3d at 714; *Rose v. Volvo Const. Equipment North America, Inc.*, No. 1:05 CV 168, 2007 WL 846123, *13 (N.D. Ohio Mar. 20, 2007).  There are no federal statutory claims at issue in this case.

### D.  Stay

Although Defendant has asked the court to stay the proceedings, the court concludes that this matter should be dismissed in accordance with what other courts have done when *all* claims raised by the plaintiff must be submitted to arbitration.  *See, e.g., The Detroit Edison Co. v. Burlington Northern and Santa Fe Ry. Co.*, 442 F.Supp.2d 387, 393 (E.D. Mich. 2006) (dismissing case despite Defendant's request to stay the proceedings in accordance with what other courts have done when all claims raised by the plaintiff must be submitted to arbitration); *Green v. Ameritech Corp*., 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the

-11-

case when all of the issues raised in the district court must be submitted to arbitration.") (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992))*; Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). For the court to continue to retain jurisdiction by staying the action will serve no purpose, since any post-arbitration remedies sought by the parties will entail a limited review of arbitrator's award, and not "renewed consideration and adjudication of the merits of the controversy." *See Alford*, 975 F.2d at 1164. Therefore, the court shall dismiss the case.

## V. CONCLUSION

For the aforementioned reasons, the court hereby grants Defendant's Motion for Order to Compel Arbitration (ECF No. 10), denies its request for a stay, and instead dismisses the case.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

May 31, 2011